

Alexander Polikoff, Chicago, Ill., for plaintiffs.

Gershon M. Ratner, Associate General Counsel for Litigation, U.S. Dept. of HUD, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

**Dorothy GAUTREAUX, et al., Plaintiffs,**

v.

**Samuel R. PIERCE, Secretary of Department of Housing and Urban Development, et al., Defendants.**

**Nos. 66 C 1459, 66 C 1460.**

United States District Court,
N. D. Illinois, E. D.

Sept. 1, 1982.

This matter is presently before the Court on plaintiffs' motion for construction of paragraphs 5.5.1, 5.5.2 and 5.5.3 of the Consent Decree entered by this Court on June 16, 1981,[1] so as to require that the United States Department of Housing and Urban Development ("HUD") set aside contract authority for a total of 500 section 8 Existing, New Construction and Substantial Rehabilitation housing units for the benefit of the plaintiff class under the terms of the decree on October 1, 1982, the beginning of fiscal year 1983. HUD vigorously opposes plaintiffs' motion contending instead that the language of the subject paragraphs of the consent decree merely obligates HUD to set aside the requisite section 8 contract

---

1. Paragraph 8.1 of the Consent Decree provides that:

    8.1 Jurisdiction is retained by the Court for the purpose of enabling plaintiffs and HUD to apply to the Court at any time for such

further orders as may be necessary or appropriate for the construction, implementation, modification or enforcement of this Consent Decree.

authority out of fiscal year 1983 funds sometime after the beginning of the fiscal year, but not necessarily on the date upon which the fiscal year begins.[2]

Having reviewed the legal memoranda submitted by the parties with respect to this issue, and heard the excellent oral argument put forth by able counsel for both sides, the Court concludes that plaintiffs' proposed construction of paragraphs 5.5.1 through 5.5.3 of the consent decree is grammatically correct and, more importantly, consistent with the context and purpose of the consent decree as a whole. Accordingly, plaintiffs' motion for construction of the decree will be granted and HUD will be ordered to set aside a sufficient amount of contract authority to satisfy its obligations under paragraphs 5.5.1, 5.5.2 and 5.5.3 on October 1, 1982.

Paragraphs 5.5.1 through 5.5.3 provide, in substance, that:

> HUD will set aside contract authority for no fewer than [an aggregate of 500 units of section 8 assisted housing] per year, commencing at the Beginning of Fiscal Year 1982, for use in [providing relief to the plaintiff class]. . . .

HUD has already satisfied its obligation under these paragraphs for fiscal year 1982.[3] Thus, the narrow question before the Court at present is the timing of HUD's obligation for fiscal year 1983 and beyond.

Any attempt to analyze the relevant language of paragraphs 5.5.1 through 5.5.3 by the application of simple rules of grammar is quickly frustrated. The key clause for our purposes, "commencing at the Beginning of Fiscal Year 1982," could modify the immediately preceding "per year," as HUD contends, or the initial requirement that "HUD will set aside," as plaintiffs argue. Or, as plaintiffs' counsel points out, the key phrase could modify the entire preceding phrase, "HUD will set aside contract authority for no fewer than 500 units . . . per year," a grammatical construction that does not particularly help either side. The fact that HUD's proposed interpretation of the paragraphs in dispute would render the phrase "commencing at the Beginning of Fiscal Year 1982" more redundant than it would be if plaintiffs' interpretation were adopted does lend some support to plaintiffs' position, if only by negative inference. As counsel accurately pointed out during oral argument, the word "Beginning" is superfluous under HUD's reading of the decree which infers that HUD's obligation commences whenever fiscal year funds are appropriated to the agency during the fiscal year. But we need not rest our decision on such a tenuous basis in light of the context in which the consent decree was entered, the purpose it was intended to serve and the nature and effect of other provisions of the decree compared to the provisions at issue here.

As Judge Crowley noted in his opinion issued after the fairness hearing in which he approved the entry of the consent decree in this case, the decree is, in large part, a continuation of the process begun by a series of letters of understanding between

**2.** Theoretically, HUD's proposed interpretation of the language of the decree would allow it to set aside the requisite amount of section 8 authority anytime during the fiscal year, from October 1, 1982 until September 30, 1983. As a practical matter, however, HUD maintains that if its proposed interpretation were adopted, it would set aside the section 8 contract authority mandated by the decree sometime during the first quarter of the fiscal year by which time Congress has usually appropriated funds for HUD out of the authorized budget for the relevant fiscal year.

**3.** HUD reserved contract authority for 500 section 8 units under paragraphs 5.5.1 through 5.5.3 in December, 1981, near the end of the first quarter of fiscal year 1982, despite the fact that on August 27, 1981, and again on October 9, 1981, plaintiffs' counsel informed HUD that, in his view, the consent decree required the reservation of contract authority at the commencement of the fiscal year on October 1st. By the same token, a staff attorney in HUD's office of the General Counsel informed one of plaintiffs' counsel that he did not interpret the Consent Decree to require that HUD make the annual set aside available on the first day of the fiscal year. In the Court's view—and contrary to the parties' positions on this point—neither side has waived the right to contest the other's interpretations of the particular provisions of the decree at issue here.

plaintiffs and HUD by which they had been attempting to provide relief for the plaintiff class since 1976. If the letter agreements provided that any set aside to be made by HUD should come out of the appropriations for a particular fiscal year (the so-called "fiscal year source theory"), and those letter agreements are concededly the forerunners of the consent decree, that would be fairly compelling evidence that the parties intended to adopt the fiscal year source theory and continue that practice under the consent decree. Conversely, if the letter agreements did not embody the so-called fiscal year source theory, that would be strong evidence that the parties did not intend to adopt such a concept under the consent decree, at least in the absence of an express statement to that effect.

The Court has reviewed the letters of understanding between HUD and plaintiffs dated June 7, 1976, July 29, 1977, and November 8, 1979, attached as exhibits to plaintiffs' reply memorandum, and our review supports plaintiffs' contention that there is a conspicuous absence of language indicating that HUD's obligations thereunder were to be satisfied out of the appropriations for a particular fiscal year. Rather, most of HUD's obligations either arose on a particular date (e.g., not later than October 1, 1977) or continued over a clearly specified period that frequently spanned more than one fiscal year (e.g., during the period July 1, 1977, to December 31, 1978). There is no indication that the parties intended for HUD to satisfy the imposed obligations under the letters of understanding out of the appropriations for a particular fiscal year. Rather, the letters of understanding support the contrary inference that the parties intended that HUD satisfy its obligations out of whatever funds were available at the time or during the period in which HUD's obligations attached.

The inference that if the parties intended to adopt a fiscal year source model they would have done so explicitly is buttressed by the fact that at two places in the consent decree, the parties expressly provided that HUD's obligations were keyed to appropriations for a particular fiscal year. Under paragraph 5.5.4 of the decree, for example, HUD is directed to see that a particular percentage of the units "for which Fiscal Year 1981, or later, contract authority is initially reserved" are made available to eligible persons in accordance with specified marketing arrangements. In addition, Paragraph 5.6.2 of the decree provides that no fewer than ten percent of certain section 8 new construction projects "for which Fiscal Year 1981, or later, contract authority is initially reserved" shall be designed for large families, thus excluding projects that might be constructed after the entry of the decree but having section 8 contract authority derived from pre-fiscal 1981 appropriations. Paragraphs 5.5.1 through 5.5.3 are worded quite differently than paragraphs 5.5.4 and 5.6.2, leading to the conclusion that they were not all intended to mean the same thing.

Counsel for HUD candidly conceded during oral argument that, as a practical matter, the parties may never have shared the same subjective intent with regard to the interpretation of paragraphs 5.5.1 through 5.5.3 during the extended negotiations leading up to the entry of the consent decree. As seen by the light filtered through the earlier letters of understanding and in the context of other provisions of the decree having a different wording and effect, however, we must conclude that the language in question imposes an obligation on HUD to set aside the requisite contract authority on a date certain, namely, at the beginning of the fiscal year. Such a requirement, and the certainty of its application, is also consistent with the undisputed purpose and goal of the consent decree; to provide long delayed relief to the plaintiff class as rapidly as possible within the parameters set forth in the decree.

In this vein, the parties must have intended, as nearly as circumstances would permit, that a continuous stream of relief would be provided by the decree until HUD's obligations thereunder are satisfied as opposed to a stream characterized by repeated gaps of indeterminate length.

Yet the latter state of affairs would result if HUD's proposed interpretation of paragraphs 5.5.1 through 5.5.3 were adopted. Under HUD's proposed interpretation, a finite measure of relief would have been provided during the period between July and September, 1981, with a potential gap from October 1, 1981, until HUD decided to set aside section 8 contract authority sometime during fiscal year 1982. The same potential gaps could occur in each subsequent year between the exhaustion or withdrawal of section 8 contract authority at the end of each fiscal year and HUD's set aside of such authority sometime during the next fiscal year. Although some gaps could conceivably occur under plaintiffs' proposed interpretation if the set aside were exhausted early in the fiscal year, they would not occur so soon after the decree was entered or for as long as under HUD's proposal.

Accordingly, for all of the reasons set forth above, plaintiffs' motion for construction of the consent decree is granted. HUD shall set aside sufficient section 8 contract authority to satisfy its obligations under paragraphs 5.5.1, 5.5.2 and 5.5.3 on October 1, 1982, and on the first day of subsequent fiscal years as required by the terms of the consent decree. It is so ordered.